2023 IL App (1st) 221776-U

FOURTH DIVISION
November 16, 2023

No. 1-22-1776

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| YARYNA CHOLACH, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 2019 D 230474 |
| and | ) | |
| | ) | |
| NAZAR CHOLACH, | ) | Honorable |
| | ) | Jeanne Marie Reynolds, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE OCASIO III delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held***:**    The circuit court's allocation of decision-making responsibilities was not against the manifest weight of the evidence, and this court lacks jurisdiction to determine whether the circuit court abused its discretion when it allocated petitioner the martial home insofar as it is not a final order.

¶ 2    The respondent, Nazar Cholach, challenges two portions of the circuit court's allocation judgment. First, he argues that the circuit court's allocation of all decision-making for the minor

children to the petitioner, Yaryna Cholach, was against the manifest weight of the evidence. Second, he contends that the circuit court abused its discretion by awarding Yaryna the martial home. We affirm in part and dismiss in part.

¶ 3                                    BACKGROUND

¶ 4      Yaryna and Nazar Cholach were married on June 18, 2005. Two children were born during their marriage, minors M.C. and Z.C. The couple purchased a home during their marriage (the marital home) located at 2500 Windsor Mall Drive, Apartment 1A, in 2016. Nazar paid the mortgage and utilities for the home.

¶ 5      On October 21, 2019, Yaryna filed a petition for dissolution of marriage. On October 29, 2019, Nazar and Yaryna agreed to a nesting situation. Under the nesting situation, Yaryna would live in the martial home during the week with the minor children and Nazar would live in the martial home with the minor children during the weekends. Additionally, Nazar was to notify Yaryna 8 to 24 hours in advance as to when he would be at the marital home.

¶ 6      On October 22, 2021, a guardian *ad litem* (GAL) was appointed for M.C. and Z.C.

¶ 7      On September 19, 2022, a hearing was held regarding the allocation of decision-making and parental time. The GAL, Yaryna, and Nazar testified. During the hearing, the GAL recommended that M.C. and Z.C. be in the care of Yaryna during the week and alternate weekends between Yaryna and Nazar. The GAL stated Nazar was not present during the week due to his employment and that Yaryna was the primary caregiver of the children. The GAL's recommendation was that Yaryna make all major decisions for the minor children as she was the parent meeting all of their needs.

¶ 8      The GAL testified that Nazar stated he was in the process of purchasing a second piece of property and indicated he had the funds. The property was in the same area and close to the minor

children. The GAL testified that Yaryna should stay in the martial home as she is the primary caretaker and the children wanted to stay in their home.

¶ 9    The GAL testified that the level of communication between Yaryna and Nazar was poor. Specifically, Nazar was not willing to communicate with Yaryna. The GAL testified Nazar did not communicate to Yaryna when he would be at the martial home and Nazar did not respond to Yaryna when she tried to discuss issues regarding the minor children.

¶ 10    The GAL also testified the nesting situation was not working, mostly due to the parties' lack of communication. Nazar would give Yaryna approximately eight hours' notice of when he would be at the martial home, making it difficult for Yaryna to schedule the weekend for the children.

¶ 11    Yaryna testified she was the parent taking responsibility for the day-to-day responsibilities for the minor children, including taking them to the doctor, helping with their education, and taking them to their extracurricular activities. Yaryna testified she attempted to involve Nazar in decision-making, but he did not respond.

¶ 12    Yaryna testified to the problems with Nazar not communicating with her. Yaryna testified these problems interfered with her work schedule and caused her to have to find alternative childcare for the minor children during Nazar's parenting time. The lack of communication made it difficult for Yaryna to plan accommodations for the weekends when Nazar was at the martial home with M.C. and Z.C. Ordinarily, she would stay at hotels or with friends during Nazar's parenting time. Yaryna also testified Nazar had become intoxicated during his parenting time to the point where he could not drive himself home and the children had observed him become sick.

¶ 13    Yaryna testified she believed Nazar owned another piece of property. Mail arrived at the martial home with Nazar's name regarding insurance for the other property, as well as a check for

rent. Yaryna testified Nazar offered to put a down payment on a property for her, but the children wanted to stay in their current home.

¶ 14    Nazar testified he is a long-distance truck driver, and he is gone from Monday to Friday. Nazar openly acknowledged he did not communicate with Yaryna and admitted he did not respond to Yaryna's e-mails and text messages believing he was not obligated to. Moreover, Nazar testified he offered to put a down payment on a new property for Yaryna and that he did not own any other property.

¶ 15    Following the trial, the circuit court entered two separate written orders. The September 19, 2022 order granted exclusive possession of the martial home to Yaryna. The circuit court found the current nesting situation was not in the best interest of the children and that Nazar had the financial ability to find alternative housing.

¶ 16    The October 14, 2022 order granted Yaryna sole allocation for the responsibility of all decisions necessary for the minor children in the areas of education, healthcare, and extracurricular activities. The order also granted Nazar parenting time every other weekend from Friday at 6:00 p.m. to Sunday at noon.

¶ 17    The circuit court found that Yaryna had been the primary caregiver for both children since their births and she has made all major decisions for them. The circuit court noted Nazar was not home during the week and rarely participated in decisions regarding the children.

¶ 18    The circuit court noted the level of communication between the parties was very poor. Particularly, Yaryna had attempted to contact Nazar regarding the children, and he had not participated in making decisions for the children. The circuit court found Nazar's testimony regarding communication with Yaryna to be unreasonable and it confirmed Nazar had neither the ability nor the willingness to communicate with Yaryna and place his children's interests above

his own. The circuit court also stated Nazar did not appear to be willing to facilitate a good relationship between the children and Yaryna and he did not place the needs of his children above his own.

¶ 19 Regarding the wishes of the children, the circuit court found both children would like their parents to be involved in their lives and did not want to be in the middle of their parents' disagreements.

¶ 20 On October 19, 2022, Nazar filed a motion to vacate and reconsider or in the alternative stay the September 19, 2022 and October 14, 2022 orders. Nazar's motion was denied on November 3, 2022. On November 9, 2022, the circuit court entered the allocation judgment which gave Yaryna all parental responsibilities and the majority of parenting time. The allocation judgment explicitly stated it was based on the September 19, 2022 and October 14, 2022 orders, which set forth the court's review of the evidence and the factors for determining allocation of decision-making responsibilities and parenting time. In the allocation judgment, the circuit court made a Rule 304(a) finding.

¶ 21 Nazar timely appealed from the November 9 allocation judgment only. No appellee brief was filed.

¶ 22                                    ANALYSIS

¶ 23 Initially, we note that Yaryna did not file an appellee's brief. On August 23, 2023, we ordered this case be taken on the record and Nazar's brief only. Generally, the court will not act as advocate for an appellee who has not filed a brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). A reviewing court may decide the merits of a case where the record is simple and the issues can be decided without the aid of the appellee's brief. *Id.* We believe we can decide the merits of this case without the aid of an appellee's brief.

¶ 24                                     I. Jurisdiction

¶ 25    Before turning to the merits of the case, we must consider whether we have jurisdiction over this appeal. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). Nazar states in his brief the court has jurisdiction pursuant to Rules 304(a), 304(b)(6), and 311(a). Ill. S. Ct. R. 304(a), (b)(6) (eff. Mar. 8, 2016); R. 311(a) (eff. July 1, 2018).

¶ 26    Rule 304 governs appeals from final judgments that do not dispose of an entire proceeding. Ill. S. Ct. R. 304 (eff. Mar. 8, 2016). Rule 304(a) provides that, "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 27    Rule 304(b)(6) allows for the immediate appeal from a "custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.*) or Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq.*)." Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016). "Parental responsibilities" is defined as "both parenting time and significant decision-making responsibilities with respect to a child." 750 ILCS 5/600(d) (West 2020).

¶ 28    Here, Nazar appeals from the November 9, 2022 allocation judgment, which was based on the September 19, 2022 and October 14, 2022 court orders. The allocation judgment states, "This Order is final and appealable as to Allocation of Parental Responsibility and Decision Making pursuant to Supreme Court Rule 304(a). This [*sic*] is no just reason for delay [*sic*] either enforcement or appeal on both." We may consider the November 9, 2022 allocation judgment

under Rule 304(b)(6), which allows appeals from interlocutory orders relating to the allocation of parental responsibilities.

¶ 29    The October 14, 2022 order granted Yaryna sole decision-making responsibilities and granted Nazar parenting time every other weekend. While the appeal was not taken from this order, we may consider the findings contained therein as the November 9, 2022 allocation judgment was based on those findings, and it falls under the purview of Rule 304(b)(6).

¶ 30    With respect to Nazar's objection to granting Yaryna exclusive possession of the martial home in the September 19, 2022 order, the order did not contain Rule 304(a) language, was not included in the Notice of Appeal, and insofar as it was incorporated into the November 9, 2022 allocation judgment, the Rule 304(a) language applied only to the allocation of parental responsibilities. The September 19, 2022 order as to the possession of the martial home does not fall within Rule 304(b)(6) and the Rule 304(a) finding was made only as to the allocation of the decision-making responsibilities and parenting time.

¶ 31                    II. Allocation of Parental Decision-Making Authority

¶ 32    Nazar argues the trial court's allocation of decision-making authority for the minor children to Yaryna was against the manifest weight of the evidence.

¶ 33    Under section 602.5(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/602.5(a) (West 2020)), the trial court must allocate parental decision-making responsibilities based on the child's best interest. In making its determination, the trial court must consider the relevant factors, which include: (1) the child's wishes; (2) the child's adjustment to his or her home, school, and community; (3) the mental and physical health of all individuals involved; (4) the ability of the parents to cooperate to make decisions, or the level of conflict that may affect their ability to share decision-making; (5) the level of each parent's participation in past significant

7

decision-making with respect to the child; (6) any prior agreement or course of conduct between the parents relating to decision-making with respect to the child; (7) the parents' wishes; (8) the child's needs; (9) the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement; (10) whether a restriction on decision-making is appropriate; (11) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child; (12) the physical violence or threat of physical violence by the child's parent directed against the child; (13) the occurrence of abuse against the child or other member of the child's household; (14) whether one of the parents is a sex offender; and (15) any other factor that the court expressly finds to be relevant. *Id*. § 602.5(c).

¶ 34    The trial court is required to consider the credibility of the testimony, weigh the evidence, and exercise its discretion to determine the best interest of the child. See *In re Custody of Sussenbach*, 108 Ill. 2d 489, 499 (1985). " 'In child custody cases, there is a strong and compelling presumption in favor of the result reached by the trial court because it is in the superior position to evaluate the evidence and determine the best interests of the child.' " *Young v. Herman*, 2018 IL App (4th) 170001, ¶ 64 (quoting *In re Marriage of Agers*, 2013 IL App (5th) 120375, ¶ 25).

¶ 35    A trial court's determination regarding allocation of decision-making will not be reversed unless the decision is against the manifest weight of the evidence. *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 47. A decision is against the manifest weight of the evidence when the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on the evidence. *Id.* While the trial court must consider all relevant factors when making its determination, it is not required to make an explicit finding for each factor. *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶43.

¶ 36    In his appeal, Nazar argues the circuit court's order failed to consider each of the best interest factors as they pertain to decision-making, and the order focused on facts relating to parenting time. The circuit court's order states it "reviewed the evidence and all the relevant Best Interest Factors as outlined in 750 ILCS 5/602.7(b)." The order also states, "The Court has reviewed all statutory factors with regards to the Allocation of Parenting Decisions and Parenting Time."

¶ 37    While the circuit court's order only references section 602.7(b), it is clear the court combined the factors in sections 602.5 and 602.7. The factors for the allocation of parental decision-making and allocation of parenting time are nearly identical, except section 602.5 contains 15 factors while section 602.7 contains 17 factors. The additional two factors are "(12) the willingness and ability of each parent to place the needs of the child ahead of his or her own needs" and "(16) the terms of a parent's military family-care plan that a parent must complete before deployment if a parent is a member of the United States Armed Forces who is being deployed." 750 ILCS 5/602.7(b)(12), (b)(16) (West 2020).

¶ 38    We reject Nazar's argument that this case is similar to *Sadler v. Pulliam*, 2022 IL App (5th) 220213. In *Sadler*, the appellate court reversed the trial court's findings as it was unclear which statutory factors were considered in determining the best interest of the child. *Sadler*, 2022 IL App (5th) 220213, ¶¶ 43-46. Here, the circuit court's order clearly states the statutory section it considered and that it "reviewed all statutory factors with regards to the Allocation of Parenting Decisions and Parenting Time." Additionally, the circuit court offered detailed findings for each factor in its order.

¶ 39    Nazar further argues the circuit court improperly considered the level of communication between the parties and misconstrued Nazar's testimony. During the hearing, the circuit court

heard testimony from the GAL, Yaryna, and Nazar. Testimony revealed Yaryna and Nazar had poor communication. Often, Nazar would not respond to Yaryna when she contacted him regarding the children. In its order, the circuit court noted Nazar admitted he ignored and failed to respond to texts or emails from Yaryna and that he failed to communicate with Yaryna on parenting issues. The circuit court properly considered the communication between the parties in making its determination as to the best interest of the children.

¶ 40 In this case, while the circuit court could have explicitly stated it was combining the best interest factors of sections 602.5 and 602.7, its order provided detailed findings and considered all relevant factors. We find the circuit court's allocation of decision-making to Yaryna was well supported by the evidence and is not against the manifest weight of the evidence.

¶ 41                                                  CONCLUSION

¶ 42 For the reasons set forth above, we affirm the judgment of the circuit court granting sole decision-making responsibilities to Yaryna as it was not against the manifest weight of the evidence and dismiss the appeal as to the possession of the martial home to the Yaryna for lack of jurisdiction.

¶ 43 Affirmed in part and dismissed in part.