2024 IL App (1st) 221927-U

FOURTH DIVISION
Filed February 15, 2024

No. 1-22-1927

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| *In re* MARRIAGE OF | ) Appeal from the Circuit Court |
| | ) of Cook County. |
| YARYNA CHOLACH, | ) |
| | ) |
|    Petitioner-Appellee, | ) |
| | ) No. 19 D 230474 |
|   and | ) |
| | ) |
| NAZAR CHOLACH, | ) Honorable |
| | ) Jeanne Marie Reynolds, |
|    Respondent-Appellant. | ) Judge, presiding. |

_____

     JUSTICE OCASIO delivered the judgment of the court.
     Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's contempt determination and the underlying orders granting interim attorney fees, childcare expenses, and 508(b) fees.

¶ 2    The respondent, Nazar Cholach, appeals the circuit court's order that held him in indirect civil contempt for disobeying court orders for interim attorney fees, child-related expenses, and attorney fees under section 508(b) (508(b) fees) of the Illinois Marriage and Dissolution Act (Act)

(750 ILCS 5/508(b) (West 2020)). A body attachment was issued against Nazar for failing to pay the purge amount. We affirm.

¶ 3                                        BACKGROUND

¶ 4     The parties are involved in a dissolution-of-marriage proceeding. This is the second time the parties have been before this court during the course of this dissolution. Previously, we affirmed the circuit court's allocation of decision-making responsibilities, finding it was not against the manifest weight of the evidence. See *In re Marriage of Cholach*, 2023 IL App (1st) 221776-U.

¶ 5     Yaryna filed a petition for dissolution of marriage on October 19, 2019. On October 29, 2019, the circuit court ordered Nazar to pay for half of the day-care expenses. A guardian *ad litem* (GAL) was appointed for the minor children on October 22, 2021. On July 20, 2022, an order was entered requiring the parties to pay the GAL an additional retainer of $4000. One-third was to be paid by Yaryna, and the remaining two-thirds was to be paid by Nazar.

¶ 6     On August 24, 2022, Yaryna filed a "Petition for Specific Contribution to Petitioner's Attorney's Fees and Costs Incurred Due to Respondent's Failure to Pay Guardian Ad Litem Fees," which she later amended on September 16, 2022. Yaryna argued Nazar's failure to pay his portion of the GAL's additional retainer caused her to incur additional attorney fees and costs.

¶ 7     On September 12, 2022, Yaryna filed a "Verified Petition for Rule to Show Cause and for Other Relief." Yaryna argued Nazar should be held in indirect civil contempt of court as "Nazar has willfully and contemptuously failed to pay all his Day Care, extra-curricular expense, and school fee obligations due to Yaryna" despite the October 29, 2019 order. Additionally, "Nazar is unable to provide any good cause or justification on why he has failed to pay his share of the Day

Care expenses for the parties' youngest minor child." In his response, Nazar argued he was not obligated to contribute to the day-care expenses as he was not provided an invoice.

¶ 8    On September 16, 2022, Yaryna filed a "Verified Petition for a Finding of Civil Contempt, to Set a Purge, and for Sanctions." Yaryna alleged Nazar was in willful indirect civil contempt for his failure to comply with the July 20, 2022 order requiring him to pay two-thirds of the GAL's additional retainer. Yaryna asked the circuit court to find Nazar in contempt of court and requested 508(b) fees due to the attorney costs incurred due to Nazar's conduct.

¶ 9    On September 16, 2022, Yaryna filed a "Petition for Contribution to Interim and Prospective Attorney's Fees." The petition alleged Yaryna had "exhausted her financial resources, available credit, and [could not] further pay interim and prospective attorney's fees." It also alleged "Nazar's willful refusal to participate efficiently in the judicial process by attending a Pre-Trial Conference and his constant failure to respond to discovery requests has caused unnecessary attorney time to be expended in the instant case." In support of her petition, Yaryna attached a signed and notarized affidavit in which she stated she "[had] no financial assets" and she "incurred debt to pay [her] attorneys' fees and [her] credit cards [were] maxed out." Additionally, "Nazar is self-employed" and "according to his financial affidavit earns a gross monthly salary of $7,000.00 from said employment."

¶ 10    Nazar filed a response to the petition asking the circuit court to deny Yaryna's request for interim attorney fees. Nazar alleged Yaryna owned her own cleaning business and made approximately $121,647 after expenses. Further, Nazar alleged his net income from the previous year was $52,877 and he paid the mortgage, association dues, taxes, electricity for the martial home.

¶ 11    On November 3, 2022, the circuit court heard testimony from the parties and the GAL regarding the pending motions. With regard to the "Petition for Specific Contribution to Petitioner's Attorney's Fees and Costs Incurred Due to Respondent's Failure to Pay Guardian Ad Litem Fees," the circuit court stated, "I do recognize the fact that as a direct result of the respondent's noncompliance, that fees were incurred. And I do believe that they were willfully incurred." Further, it found "[t]he respondent's behavior in this case did cause numerous court proceedings to occur that didn't need to occur" and awarded $2500 in 508(b) fees.

¶ 12    With regard to the "Petition for Contribution of Interim Attorney's Fees," Yaryna argued there had been "an enormous rate of time trying to chase [Nazar] around, filing petitions, pursuing discovery, getting discovery, subpoenaing documents." Additionally, Nazar had received approximately $225,000 in deposits in 2021 and through June 2022 he had approximately $150,000 in deposits. Nazar also transferred $300,000 from his bank accounts to a bank in Ukraine. Yaryna also argued Nazar had a number of assets and collected rental income. Nazar argued Yaryna had a higher gross income and he was paying for the mortgage, the association fees, and other utilities and bills.

¶ 13    The circuit court awarded $25,000 in interim fees finding "there are large sums of cash available to [Nazar] from his business records" and "[Nazar] has a greater ability than [Yaryna] does to pay the interim fees."

¶ 14    With regard to the "Verified Petition for Rule to Show Cause and for Other Relief," Yaryna testified Nazar had not paid his half of the day-care expenses. In 2020, she paid the total amount for day care in August, September, and October as Nazar did not pay his portion. Yaryna testified she sent Nazar invoices for the amount due for summer camp from June 2022 to August 2022. Nazar did not pay his half of the summer-camp expenses.

¶ 15    Nazar testified he was aware he was required to pay half of the childcare expenses to the provider. Nazar admitted he did not make payments in August, September, and October 2020. Nazar testified he did not make the payments because Yaryna "received support from the government based on taxes." Nazar further testified he did not make payments for summer camp because "[t]here were too many different statements."

¶ 16    The circuit court found Nazar had an obligation to pay the childcare expenses. Yaryna emailed Nazar about summer camp and extracurricular activities and Nazar did not respond. The court found "summer camp necessary for childcare for an eight-year-old child while her mother is working, and her father is out of town working." The circuit court found Nazar's unpaid childcare expenses to be $4909.

¶ 17    In a written order, the circuit court found Nazar had the financial ability to contribute to the interim and prospective attorney fees of Yaryna and Yaryna did not have the financial ability to pay. Nazar had "caused this entire proceeding to be elongated by his unreasonable conduct and failure to cooperate, which has caused substantial additional time and expense to be incurred by [Yaryna] for legal fees which would have been unnecessary." The circuit court ordered Nazar to pay $25,000 in interim attorney fees. The circuit court also found Nazar had "intentionally and willfully failed to pay the child care expenses" and was in "willful violation of the October 2019 Court order." The circuit court found Nazar in contempt and ordered him to pay the $4909 in back childcare expenses. Finally, the circuit court awarded $2500 in 508(b) fees, which were incurred due to Nazar's failure to pay GAL fees, to Yaryna's attorney "due to the contemptuous conduct on the part of [Nazar]" and "the itemized billing statements [were] reasonable and necessary."

¶ 18    On November 9, 2022, the circuit court ordered Nazar to pay Yaryna's attorney $27,500, which included the $25,000 in interim attorney fees, as ordered by November 14, 2022, and $2500

in 508(b) fees as ordered by December 1, 2022. The circuit court also ordered Nazar to pay Yaryna $4909 for back childcare expenses by November 14, 2022.

¶ 19    On November 21, 2022, Yaryna filed a petition to find Nazar in indirect civil contempt. Yaryna alleged Nazar had failed to pay the $25,000 in interim attorney fees as ordered, failed to pay the $4909 in back childcare expenses, and had not paid the $2500 in 508(b) fees.

¶ 20    Nazar filed a motion to vacate and reconsider the November 3, 2022 and the November 9, 2022 court orders.

¶ 21    The circuit court denied Nazar's motion and issued a rule to show cause as to why he should not be held in contempt for failing to comply with the court's orders.

¶ 22    On December 13, 2022, the circuit court held a hearing on the petition for the rule to show cause and contempt. Yaryna, her attorney, and Nazar's attorney were present in person; however, Nazar failed to appear. The circuit court found Nazar was in "willful and direct civil contempt for failure to abide by the Court orders." The court set the purge at $32,409, which had to be paid by December 16, 2022. The circuit court also issued a body attachment.

¶ 23    On December 20, 2022, Nazar filed a notice of appeal.

¶ 24                                    ANALYSIS

¶ 25    On appeal, Nazar argues the circuit court erred by (1) ordering him to pay $25,000 in interim attorney fees, (2) when it issued a judgment for $4909 for child-related expenses, and (3) when it ordered him to pay $2500 in 508(b) fees.

¶ 26    Initially, we note that Yaryna did not file an appellee's brief. On December 4, 2023, we ordered that this case be taken on the record and Nazar's brief only. Generally, the court will not act as advocate for an appellee who has not filed a brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). A reviewing court may decide the merits of a case

where the record is simple, and the issues can be decided without the aid of the appellee's brief. *Id.* We believe we can decide the merits of this case without the aid of an appellee's brief.

¶ 27                                    I. Contempt of Court

¶ 28     Rule 304(b)(5) permits the appeal of "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty" without a Rule 304(a) finding. Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Therefore, only a contempt order that imposes a sanction is immediately appealable. *In re Marriage of Gutman*, 232 Ill. 2d 145, 152 (2008).

¶ 29     "Contempt of court has been defined as 'conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or dignity, or to bring the administration of the law into disrepute.' " *Windy City Limousine Co. v. Milazzo*, 2018 IL App (1st) 162827, ¶ 36 (quoting *People v. Geiger*, 2012 IL 113181, ¶ 26). "Courts have the inherent authority to reprimand contemptuous conduct because 'such power is essential to the maintenance of their authority and the administration of judicial powers.' " *Id*. (quoting *People v. Simac*, 161 Ill. 2d 297, 305 (1994)).

¶ 30     Contempt may be direct or indirect and either civil or criminal. *Id.* "Properly identifying the type of contempt is critical because the procedures that must be followed depend on the type of contempt involved." *Id.* "[C]ivil contempt concerns future conduct while criminal contempt concerns past conduct. Usually, the distinguishing characteristic between civil and criminal contempt is the alleged contemnor's ability to purge the 'contempt charge by complying with the order the court sought to enforce.' " *Id.* ¶ 37 (quoting *Milton v. Therra*, 2018 IL App (1st) 171392, ¶ 35). A person held in civil contempt must have the ability to purge the contempt by complying with the court order. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 26. Civil contempt

is coercive in nature, so "the civil contemnor must be provided with the 'keys to his cell.' " *In re Marriage of Logston*, 103 Ill. 2d 266, 289 (1984).

¶ 31    Indirect civil contempt "covers the entire range of contemptuous conduct which does not occur in open court or in a constituent part of the court." *In re Marriage of Betts*, 200 Ill. App. 3d 26, 48 (1990). Indirect civil contempt requires minimal due process, which consists of notice and the opportunity to be heard. *Id.* at 52-53. In order to find a person in indirect civil contempt there must be "[t]he existence of [a valid] order of the trial court and proof of a willful disobedience of that order." *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006).

¶ 32    " 'The power to enforce an order to pay money through contempt is limited to cases of wilful refusal to obey the court's order.' " *In re Marriage of Barile*, 385 Ill. App. 3d 752, 758 (2008) (quoting *Logston*, 103 Ill. 2d at 285). Noncompliance with a court order constitutes *prima facie* evidence of contempt. *Logston*, 103 Ill. 2d at 285. Once it is proven that a court order has been violated, the burden shifts to the respondent to show they should not be held in contempt. *Id.* A finding of indirect civil contempt will not be disturbed unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *Barile*, 385 Ill. App. 3d at 759. Additionally, if the underlying order of the trial court is later found to be invalid, then the contempt order must be vacated. *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 66.

¶ 33    Here, Yaryna filed a petition for contempt on November 21, 2022. On December 2, 2022, the circuit court entered on order on a rule to show cause finding Yaryna made a *prima facie* case of indirect civil contempt and ordered "a Rule will issue against [Nazar] to show cause why [he] should not be held in contempt of Court for failure to [p]ay the $25,000.00 in interim attorney's fees and the $2,500.00 of 508(b) fees to Petitioner's counsel per the Court Order on November 3, 2022 and for failing to pay the $4,909.00 to Petitioner for day-care expenses which Nazar Cholach

was already held in contempt on November 03, 2022 as ordered by the Court on November 03, 2022 and November 09, 2022." Following a hearing on December 13, 2022, the circuit court found Nazar in indirect civil contempt based on his violations of the November 3, 2022 and November 9, 2022 court orders. At the hearing, Nazar did not appear; however, his attorney was present. After finding Nazar to be indirect civil contempt, the court ordered a purge of $32,409 and ordered Nazar committed to the Cook County Jail. The circuit court stayed the commitment until December 16, 2022, allowing Nazar time to pay the purge amount.

¶ 34    Nazar was given due process regarding whether he should be found in contempt of court, and the December 14, 2022 orders finding Nazar in indirect civil contempt and imposing a sanction are appealable orders. As the review of a contempt finding requires review of the underlying orders, we have jurisdiction to review the November 3, 2022 and November 9, 2022 court orders compelling Nazar to pay interim attorney fees, day-care expenses, and 508(b) fees. See *In re Marriage of Sharp*, 269 Ill. App. 3d 271, 277 (2006).

¶ 35                                    II. Interim Attorney Fees

¶ 36    Nazar argues the circuit court abused its discretion when it awarded $25,000 in interim attorney fees as the court made contradictory findings and failed to consider Yaryna's ability to pay.

¶ 37    Section 501(c-1) of the Act allows a trial court to assess attorney fees and costs in favor of the petitioning party's counsel while the case is still pending. 750 ILCS 5/501(c-1) (West 2020). Petitions for interim attorney fees must be "supported by one or more affidavits that delineate relevant factors." *Id.* § 501(c-1)(1). The Act sets forth several factors the trial court should consider when assessing whether or not to grant interim attorney fees. *Id.*

¶ 38    Section 501(c-1)(3) provides:

"[T]he court *** shall assess an interim award against an opposing party in an amount necessary to enable the petitioning party to participate adequately in the litigation, upon findings that the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts. In determining an award, the court shall consider whether adequate participation in the litigation requires expenditure of more fees and costs for a party that is not in control of assets or relevant information." 750 ILCS 5/501(c-1)(3) (West 2020).

The goal of section 501(c-1) is "to equalize the relative positions of the parties before the court by shifting liability for attorney fees, thereby diminishing the advantage one party may have over the other in the presentation of the case due to a disparity in their respective financial resources." *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 315-16 (2001).

¶ 39    Generally, an order awarding interim attorney fees under section 501(c-1) of the Act is an interlocutory order which is not a final or appealable order. *Radzik*, 2011 IL App (2d) 100374, ¶ 45. "However, when a party appeals from a contempt sanction imposed for violating an interim fee order, the contempt finding is final and appealable and presents to the reviewing court the propriety of the underlying order." *Id.* Nazar timely appealed the circuit court's contempt sanction for his failure to comply with the order assessing the $25,000 interim attorney fees. Therefore, we may review the propriety of the underlying order assessing interim attorney fees. *In re Marriage of*

*Patel*, 2013 IL App (1st) 122882, ¶¶ 33-38. Interim attorney fees are reviewed for an abuse of discretion. *Beyer*, 324 Ill. App. 3d at 320.

¶ 40    Here, Yaryna filed a petition for interim attorney fees where she asserted she had "exhausted her financial resources." The attached financial affidavits from both Nazar and Yaryna showed Nazar had a higher monthly income. There was also evidence presented that Nazar transferred a large sum of money to a bank in Ukraine and earned money from other assets. The circuit court found Nazar had the financial ability to contribute to interim and prospective attorney fees and Yaryna did not have the financial ability to pay. The court noted Nazar had sent a large sum of money to Ukraine, purchased a car for his daughter, and stated he had funds to place a deposit on another property. Further, Nazar had "caused this entire proceeding to be elongated by his unreasonable conduct and failure to cooperate, which has caused substantial additional time and expense to be incurred by [Yaryna] for legal fees which would have been unnecessary."

¶ 41    There was sufficient evidence provided in Yaryna's petition for interim attorney fee and at the hearing to support the court awarding interim attorney fees to Yaryna. Therefore, we cannot say the court abused its discretion by granting the interim attorney fees.

¶ 42                          III. Child Related Expenses

¶ 43    Nazar argues the circuit court had no legal basis to find him in contempt of court or to award Yaryna $4909 in back childcare expenses as it "went beyond the four corners of the order" and "added additional items, such as summer camp and extra-curricular activities to its October 29, 2019 order."

¶ 44    As previously discussed above, noncompliance with a court order constitutes *prima facie* evidence of contempt. *Logston*, 103 Ill. 2d at 285. Once it is proven that a court order has been violated, the burden shifts to the respondent to show they should not be held in contempt. *Id.*

11

A finding of indirect civil contempt will not be disturbed unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *Barile*, 385 Ill. App. 3d at 759.

¶ 45    Nazar argues the circuit court abused its discretion by adding costs that were not included in the October 29, 2019 order, which required him to pay half of the day-care expenses. At the November 3, 2022 hearing, Yaryna testified that she paid the total costs for three months of day care in 2020, summer camp, and other activities. She also testified she tried to communicate with Nazar regarding the payments and he did not respond. Additionally, Nazar admitted he did not make payments in August, September, and October 2020 and that he did not make payments for summer camp. The circuit court elaborated that day care included summer camp and extracurricular activities as they were considered necessary as Yaryna worked during the day and Nazar worked out of town. In its written order, the circuit court found that Nazar "intentionally and willfully failed to pay the child care expenses of the minor child *** incurred for day care as well for summer camp and gymnastics camp which are all child care related expenses as well, which conduct is in willful violation of the October 2019 Court Order." Therefore, Nazar's argument that the circuit court "went beyond the four corners of the order" has no merit. When entering the judgment for $4909, the circuit court made it clear that "day care" included any activities that the minor child needed to attend while the parents were at work.

¶ 46    Further, at the contempt hearing, Nazar did not appear. Yaryna argued Nazar had not paid the $4909 as previously ordered. The court in its oral ruling stated, "I have no reason not to find him in willful contempt of Court, because he's not here to advise the Court as to why he hasn't made the payment in accordance with the Court order." There is ample evidence to support the circuit court's finding that Nazar was in indirect civil contempt by failing to pay the day care arrearage.

¶ 47                                   IV. 508(b) Fees

¶ 48    Lastly, Nazar argues the circuit court abused its discretion when it awarded 508(b) fees. Nazar contends there was no legal basis for Yaryna's petition and the circuit court granted the petition without "any meaningful hearing whatsoever and did not allow [Nazar] to present his argument."

¶ 49    Section 508(b) of the Act provides:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party. If non-compliance is with respect to a discovery order, the non-compliance is presumptively without compelling cause or justification, and the presumption may only be rebutted by clear and convincing evidence. If at any time a court finds that a hearing under this Act was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." 750 ILCS 5/508(b) (West 2020).

While not necessary, a finding of contempt is sufficient to award fees under section 508(b). *In re Marriage of Davis*, 292 Ill. App. 2d 802, 811 (1997). It is the burden of the party that is not in

compliance with the court's order to prove that there is a compelling cause or justification for the noncompliance. *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 481 (1999). "[T]he court has no discretion under section 508(b) except to determine if the failure to comply with an order was without compelling cause or justification; if it so finds, attorney fees must be imposed." *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 37 (citing *In re Marriage of Michaelson*, 359 Ill. App. 3d 706, 716 (2005)). An award of 508(b) fees is reviewed for an abuse of discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005).

¶ 50    Here, the circuit court ordered Yaryna to pay one-third of the GAL's additional retainer and the remaining two-thirds was to be paid by Nazar. Nazar failed to pay his portion, and Yaryna filed a petition asking the court to find Nazar in contempt of court and requesting 508(b) fees. Following the hearing on November 3, 2022, the circuit court entered an order finding "the conduct of [Nazar] was contemptuous" and held him in indirect civil contempt. The circuit court also granted the request for 508(b) fees finding "that an award of attorney's fees [was] appropriate against [Nazar] and the Court [found] that the itemized billing statements [were] reasonable and necessary."

¶ 51    While the circuit court's order did not explicitly state that Nazar's conduct was "without compelling cause or justification," such finding is implied by the court finding Nazar's conduct was "contemptuous." See *Putzler*, 2013 IL App (2d) 120551, ¶ 38. ("Preliminarily (and as to both contempt findings), 'finding a party in contempt for failing to comply with a court order implies a finding the failure to comply was without cause or justification,' rendering mandatory the imposition of attorney fees per section 508(b)." (quoting *In re Marriage of Deike*, 381 Ill. App. 3d 620, 634 (2008))). Moreover, we find there is adequate evidence in the record to support the circuit court's finding. Therefore, since the circuit court found Nazar's conduct contemptuous, his failure

to comply with the July 20, 2022 order was without cause or justification and the circuit court did not abuse its discretion when it awarded 508(b) fees.

¶ 52                                     CONCLUSION

¶ 53    For the reasons set forth above, we affirm the judgment of the circuit court.

¶ 54    Affirmed.