2024 IL App (1st) 230618-U

No. 1-23-0618

Order filed May 3, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF: | ) | Appeal from the |
| | ) | Circuit Court of |
| YARYNA CHOLACH, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 19 D 230474 |
| | ) | |
| and | ) | Honorable |
| | ) | Jeanne Marie Reynolds, |
| NAZAR CHOLACH, | ) | Judge, Presiding. |
| | ) | |
| Respondent-Appellant. | ) | |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Trial court's imposition of sanctions against respondent pursuant to Supreme Court Rule 219 (eff. July 1, 2022) for his repeated failure to comply with discovery or several court orders in the parties' prolonged divorce proceedings was not an abuse of discretion.

¶ 2   Petitioner Yaryna Cholach filed an action for dissolution of marriage against respondent Nazar Cholach on October 21, 2019. After a default judgment was entered against respondent on

February 22, 2023, respondent filed a motion to vacate and reconsider the default dissolution of marriage on March 16, 2023, which the circuit court denied on March 20, 2023. Respondent appeals, contending that the default judgment entered against him constitutes a violation of his constitutional due process rights. For the reasons that follow, we affirm.

¶ 3    Although petitioner has not filed a brief on appeal, we will consider the appeal pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976).

¶ 4                                    BACKGROUND

¶ 5    This case involves very lengthy and contemptuous dissolution of marriage proceedings between the parties. This case has previously been before this Court on two prior interlocutory appeals filed by respondent in November and December 2022, respectively.

¶ 6     The record reveals that this case began when petitioner filed a petition for an emergency order of protection (EOP) for herself and her children against respondent on September 20, 2019, which was granted. Respondent was served with a copy of the EOP on September 27, 2019, and notified of the hearing set for October 7, 2019. On October 7, 2019, the circuit court extended the EOP until October 23, 2019, and set a hearing on the plenary order of protection for October 23, 2019.

¶ 7    On October 21, 2019, petitioner filed the dissolution of marriage petition that is the subject of this appeal. In the petition, petitioner alleged that she was employed as a cleaning lady and respondent was employed as a truck driver. The parties were married in Ukraine on June 18, 2005, and two children were born during the marriage, namely Maryana born January 24, 2006, and Zlata born June 6, 2016. The following day, petitioner filed an *ex parte* emergency petition for a

restraining order (TRO) and thereafter a preliminary injunction against respondent based on petitioner's belief that respondent would attempt to convey, conceal, hide, dissipate, transfer, spend, and otherwise dispose of or encumber substantial marital assets of the parties.

¶ 8     On October 23, 2019, the EOP was terminated due to an agreed restraining order entered by the parties. Pursuant to the agreed order, the parties agreed that: (1) respondent would provide an accounting regarding the matters raised in the *ex parte* TRO within 30 days; (2) the *ex parte* TRO petition was continued to the next court date; (3) prior to the next court date, the parties would exchange financial affidavits with supporting documentation; (4) respondent would continue paying the mortgage and assessments for the marital residence, electricity and internet service; (5) respondent would also pay half of daycare expenses, then totaling $230 per week directly to the service provider on production of the invoice; (6) a mutual restraining order was entered against both parties restraining them from physically abusing, harassing, intimidating, striking or interfering with the personal liberty of the other party or the minor children, nor remove the minor children without the consent of the other party; (7) respondent would temporarily reside outside of the marital home except that he would have the right to spend up to 48 consecutive weekend hours for visitation with the minor children and petitioner would spend that time outside of the marital home, unless petitioner had advance plans for the children, notified respondent and then have the children available for visitation with respondent for at least one day during that period; (8) respondent would notify petitioner eight to twenty-four hours in advance by text as to what time he would be at the marital home for 48 hours, with the 48 hours based on respondent's schedule and was expected to vary from Friday evening to Monday morning with petitioner confirming receipt of respondent's message by text; (9) if respondent would stay through Monday,

he would notify petitioner of his departure time, and if not leaving before 7 a.m. on Monday, respondent was to take the youngest child to daycare; if he left on Sunday, that he would leave no later than 10 p.m.; and (10) a status hearing was set for December 6, 2019.

¶ 9    Respondent filed his answer to the petition for dissolution of marriage on November 12, 2019. From that point forward, the record indicates that respondent engaged in a pattern of noncompliance with discovery requests and failure to comply with court orders related to discovery and other matters, including payment of the Guardian *ad litem* (GAL) fees.

¶ 10    The initial exchange of written discovery was set for March 6, 2020, as well as a draft allocation of parenting time agreement or the court would refer the matter to mediation. The case was also continued several times during the COVID-19 pandemic. When court reconvened in the fall of 2020, several status dates were set for written discovery and settlement through the end of the year, with the completion of discovery set for January 13, 2021, and entry of an allocation judgment. A pretrial conference was also scheduled and held on February 19, 2021.

¶ 11    At the pretrial conference, the circuit court entered an order for the parties to update and exchange financial affidavits within 21 days; provide any outstanding discovery documents and to timely supplement their discovery documents including any outstanding personal and business bank statements for 2019, 2020 and 2021. The matter was set for discovery compliance on March 31, 2021, via Zoom teleconference, and for another pretrial conference, which was subsequently continued to May 20, 2021.

¶ 12    On May 20, 2021, at the pretrial conference, the circuit court entered an order regarding respondent's failure to complete his discovery production or update his financial affidavit in violation of the February 19 and March 31, 2021, court orders. The order also: granted petitioner

leave to file a petition for attorney fees and a motion to compel for presentation on June 7, 2021; allowed respondent 14 days to reply to the motion; stated that the discovery orders of February 19 and March 31, 2021, remained in force and effect; and set a status for discovery compliance on June 7, 2021. Subsequently, on May 28, 2021, respondent's counsel filed a motion for leave to withdraw.

¶ 13    Petitioner filed a motion to compel respondent's responses to discovery and for sanctions against respondent for his failure to respond to discovery requests on June 2, 2021. The next day, petitioner filed an emergency motion to bar respondent's unilateral decision to travel to Ukraine with the minor children and for return of the minor children's passports. Petitioner also filed an emergency petition for a TRO and a subsequent preliminary injunction similar to the earlier one she filed regarding certain bank accounts and other marital assets in respondent's possession and control.

¶ 14    Also on June 3, 2021, respondent filed a financial affidavit which indicated that he was self-employed, received weekly paychecks and that his gross income as of November 1, 2019, was $79,226. The affidavit also indicated that his gross income for 2020 was $217,619, and he owed income taxes. Respondent reported net monthly income of -$2689, and no assets.

¶ 15    On June 7, 2021, the circuit court entered an order granting respondent's previous counsel's motion to withdraw and granted Attorney Kozlov leave to appear on respondent's behalf *instanter*; respondent was ordered to tender the children's passports to Attorney Kozlov when he returned from New York by Friday, June 11, 2021, and further that Attorney Kozlov would hold the children's passports until further order of court; respondent was granted 14 days to respond to petitioner's petition for a TRO, petitioner's motion to bar travel, and petitioner's motion to compel

discovery. Petitioner's outstanding motions were set for hearing on June 30, 2021. Respondent's responses to petitioner's outstanding motions were filed on June 21 and June 22, 2021.

¶ 16    On June 30, 2021, the circuit court entered an order granting petitioner's motion to compel, requiring respondent to produce the following discovery documents by July 2, 2021, at 11 a.m. as follows: (1) bank statements for his business bank account from February 2021 through June 2021; (2) personal bank account statement from March 2020 through June 2021; and (3) Chase credit card statements for the prior two years. Respondent's failure to produce the discovery documents by July 2, 2021, at 11 a.m. would result in him being barred from leaving the country or any travel until he produced the requested records for discovery. Petitioner's petition for a TRO was voluntarily withdrawn without prejudice; petitioner's emergency motion to bar travel was resolved in that the parties agreed to allow the children to travel with respondent to Ukraine and that an agreed upon consent and authorization for travel would be completed by the parties' respective counsel prior to July 2, 2021. Petitioner's request for sanctions and attorney fees was entered and continued to trial and the matter was set for status on respondent's compliance on July 2, 2021.

¶ 17    On July 2, 2021, petitioner's counsel informed the court that respondent complied with the outstanding discovery documents identified in the June 30, 2021, order and a signed consent for travel was forwarded to respondent. The circuit court ordered that respondent's counsel was allowed to release the children's passports to respondent for purposes of travel to Ukraine; upon respondent's return, the passports were to be given to petitioner within three days of his return to the United States; and a status hearing on settlement was scheduled for August 11, 2021. On that date, the case was set for pretrial on October 19, 2021, with pretrial memorandums due seven days prior. On October 19, 2021, both parties were ordered to update their discovery responses within

28 days; discovery depositions were to be completed within 60 days; both parties were ordered to disclose their 213(f)(2) and (f)(3) witnesses regarding real estate property and business evaluations within 75 days; Heidi Zells was appointed as GAL for the children; and the next status date was set for January 5, 2022. The January 2022 date was stricken in an agreed order and rescheduled for status on discovery and the GAL's investigation on February 18, 2022. The parties entered a second agreed order on January 27, 2022, extending the discovery deadline to March 1, 2022, with discovery depositions and disclosure of expert witnesses extended to March 15, 2022. These dates were subsequently extended to April 11 and April 25, 2022, respectively. The matter was reset for status hearing on March 29, 2022, and then continued to May 9, 2022.

¶ 18    On March 16, 2022, petitioner issued a subpoena to Chase Bank for respondent's personal and business bank statements on or before April 7, 2022. Petitioner also issued a subpoena to respondent's company, Nazar Inc., for discovery documents including bank statements, equipment, corporate records, vehicle leases, payments to shareholders, and leases or contracts due on or before April 14, 2022. Additionally, petitioner issued a subpoena to RFS Group, Inc. for discovery documents including evidence of payments to respondent and/or Nazar Inc., tax statements, gas receipts, driver logs and other records, listing of and all documents showing trucking trips made by respondent or any other driver employed by Nazar Inc., due on or before April 14, 2022.

¶ 19    On March 28, 2022, respondent filed a verified petition for temporary relief, requesting that petitioner be ordered to allow an appraisal of the marital residence and order sale of the marital residence. Respondent alleged that he contributed the majority of the funds to the purchase of the marital residence as the down payment was $40,000 and he contributed $30,000 of that amount;

and that he made substantial improvements to the residence which dramatically increased the value of the property. He also alleged that he made a substantial number of mortgage payments for the marital residence. Respondent further alleged that the marital residence lost value due to petitioner's actions and that he feared that respondent would take action to remove his name from the deed and add a nonrelated third party. He further contended that he needed the requested temporary relief to continue with the litigation, defend his rights, and support himself and the children.

¶ 20    The record indicates that on April 13, 2022, petitioner filed a notice of in-person oral discovery deposition of respondent on April 21, 2022, which also requested that respondent produce certain financial documents as identified in the notice. On April 14, 2022, petitioner filed an emergency motion to extend the oral discovery deposition deadline and expert witness disclosure deadline for 45 days from April 25, 2022, because respondent did not update his discovery as agreed, documentation was not received pursuant to subpoena from respondent's business or RPS Group. The circuit court granted petitioner's emergency motion on April 15, 2022, over respondent counsel's objection, stated that future discovery deadlines would be addressed at the May 9, 2022, status date and both parties were to tender their proposed allocation agreements by that date.

¶ 21    Petitioner's counsel filed a motion to withdraw on April 19, 2022, and heard on May 6, 2022, at which time the circuit court ordered respondent to contact the GAL by or before May 10, 2022, and schedule an appointment to speak with her regarding the case and his claims; the parties were again ordered to exchange proposed allocation judgments on or before May 10, 2022; the May 9, 2022, court date was stricken; and petitioner's counsel's motion to withdraw was continued

to the next court date, which was scheduled for May 20, 2022. Respondent filed his proposed allocation statement on May 10, 2022, and petitioner's was filed on May 12, 2022. On the same date, respondent filed a notice of intent to claim dissipation of marital assets. In support of his claim, respondent contended that: (1) in November 2018, petitioner withdrew $15,000 from the parties' bank account without notice to respondent and he believed that she did not use the funds for marital purposes, and (2) in August 2019, petitioner traded the parties' 2014 Jeep vehicle for a 2019 Toyota without respondent's knowledge. Respondent claimed that he was entitled to a credit against petitioner for such dissipations.

¶ 22    Petitioner secured new counsel on May 16, 2022, who substituted her appearance and requested that petitioner's old counsel withdraw from the case. On May 20, 2022, the circuit court granted petitioner's new counsel leave to file her appearance; granted petitioner's old counsel leave to withdraw and ordered him to surrender his file to the new counsel by May 25, 2022; petitioner was granted 28 days to respond to respondent's claim for dissipation of marital assets; petitioner was granted 45 days to submit her expert witness disclosures; and the matter was set for case management and trial on allocation issues on July 23, 2022, later changed to July 20, 2022.

¶ 23    Petitioner's attorney filed several motions to withdraw during the remainder of the proceedings based on petitioner's inability to pay as well as the excessive fees incurred due to respondent's failure to comply with discovery, the GAL or court orders and due to respondent's repeated filing of random motions and petitions. On June 17, 2022, petitioner filed her response to respondent's claim for dissipation of marital assets, arguing that respondent's claims were conclusory, failed to state any proper specific facts, were baseless and must be stricken. Petitioner further stated that the marriage was not irretrievably broken until she filed for dissolution of

marriage in October 2019, and therefore the events alleged by respondent could not be dissipation of assets. Petitioner requested that respondent's dissipation claim be dismissed and that she be awarded attorney fees and costs incurred in defending against the claim. Petitioner filed a similar response to respondent's petition for temporary relief on the same day. On June 21, 2022, petitioner's counsel filed a motion to compel respondent's counsel to disclose the name and contact information for the court reporter who transcribed petitioner's discovery deposition, as well as to comply with other discovery requests because counsel's continued willful failure to comply with requests for records amounted to malicious obstruction and delay of the proceedings. On July 7, 2022, petitioner's counsel sent a notice of subpoena to respondent's counsel requesting records for companies who were believed to have business contracts and financial records of transactions with respondent. The following day, respondent sent copies of his updated financial affidavit as well as his personal and business 2021 income tax returns.

¶ 24    On July 20, 2022, the circuit court entered an order setting a trial on the allocation of parenting time for the children for September 19, 2022. Both parties were also ordered to tender or update their expert witnesses for the allocation trial within 14 days of the order; the GAL was granted an additional retainer of $4000 with one-third to be paid by petitioner and two-thirds paid by respondent; closure of discovery for the allocation trial was set for August 22, 2022, without prejudice to the GAL inquiring or seeing the children after that date; the GAL's written report was due by August 29, 2022, and both counsels were to exchange exhibits and written stipulations by August 22, 2022. Subsequently, the circuit court issued an order on August 15, 2022, which ordered respondent to pay his share of the court-ordered retainer for the GAL ($2666.66) on that

day or he would be barred from testifying at the allocation trial on September 19, 2022, with a status hearing set for August 25, 2022.

¶ 25 On August 24, 2022, petitioner filed a petition for specific contribution to her attorney fees and costs due to respondent's failure to pay his share of the GAL fees, which were still unpaid as of the date of the petition. Petitioner requested that respondent be barred from testifying at the allocation trial as a sanction. At the status hearing the following day, the circuit court entered an order that barred respondent from testifying at the upcoming allocation trial due to respondent's willful refusal to comply with three prior court orders on two separate dates to pay his share of the GAL's fees. The court noted that respondent's counsel provided no explanation for respondent's refusal to pay except to challenge the court's authority to act without the GAL filing a formal written petition for rule. The circuit court noted that it had jurisdiction over the parties and the minor children and found respondent's behavior to be "contemptuous without any justification." Accordingly, respondent was barred from testifying at the September 19, 2022, allocation trial. Additionally, petitioner was granted leave to file a motion for default against respondent because of his "contumacious" conduct; the GAL was granted an extension to file her written report by September 5, 2022, and respondent was given 21 days to respond to the fee petition filed by petitioner's counsel which was set for hearing on September 19, 2022.

¶ 26 The GAL's written report was filed on September 6, 2022. Her report indicated that respondent initially sought only a majority of parenting time with Maryana because he did not agree with petitioner's church and priest, he also wanted joint and decision-making capabilities regarding the children, but was unwilling to discuss the case or settlement. In July 2022, Maryana expressed to the GAL that respondent wanted her to choose sides and his counsel indicated that

the marital home would need to be sold in order to address the parenting schedule. Then on August 26, 2022, respondent's counsel argued that the GAL did not have enough information to write her report. Respondent's counsel reiterated that the marital home needed to be sold and the concern that petitioner would go back to the same priest. Respondent's counsel expressed to the GAL that once the marital home is sold, the parties could have a flexible visitation schedule; respondent would put a down payment on a new place for petitioner near the children's schools and he would also get a property nearby. The GAL was unclear why the sale of the home would affect parenting time. Respondent also initially indicated that he wanted to change his visitation to every other weekend with an additional overnight during the week; however, on September 2, 2022, respondent stated that he was then seeking visitation from Friday at 6 p.m. until Sunday at noon and no overnight weekday visitation because of his work schedule.

¶ 27    The GAL also noted that petitioner's position also changed throughout the case; originally she wanted respondent to have additional time with the children and she wanted some weekend time. Petitioner then changed her mind and submitted a proposal seeking one week with the children and then one week with respondent, with joint decisions between the parties. Petitioner subsequently changed again, indicating that she should have exclusive possession of the marital home with respondent having visitation every other weekend from Friday at 5 p.m. through Sunday at 6 p.m. along with two dinner visits on weeks when he did not have weekend visitation and one dinner visit when he did have weekend visitation. Petitioner also proposed that she have sole decision-making in all major areas.

¶ 28    The GAL reviewed documents in the case including all of the circuit court's orders; all pleadings filed by the parties; proposed parenting time allocations from both parties and emails

sent from the parties; and documents tendered by the parties and their respective counsels'. The GAL also interviewed both parties.

¶ 29     She met with petitioner several times, who detailed the relationship between the parties, and described respondent's physical violence which led to an order of protection in 2019. Petitioner stated that she was the primary decision maker for the children because respondent would not communicate with her about the children or any extracurricular activities for them. Petitioner expressed concern that respondent did not always give adequate notice of when he would be arriving for visitation so that she could plan where to go as she had to leave the home when he was there. Petitioner stated that respondent was upset about her church and the priest, whom respondent accused of having a relationship with and also that the priest molested a child. The GAL was provided with documents indicating that the case against the priest was dismissed in 2015. However, petitioner stated that she had left that church but respondent still fought. Respondent was a long distance truck driver and was not home during the week, only on weekends, though petitioner indicated that she was aware that respondent was sometimes home during the week but did not see the children. Petitioner wanted some weekend time with the children. Additionally, petitioner indicated that she thought respondent should spend more time with the children as he did not always complete his full parenting time with them. However, she was very concerned that he blamed Maryana for telling the GAL that he drank in the children's presence and that he had a girlfriend, and further that he told Maryana that she had to choose which parent to live with.

¶ 30     The GAL met with respondent on December 3, 2021, via Zoom through an interpreter. Respondent stated that all of the problems in their marriage stem from a lack of trust and because

of petitioner's church. He believed that petitioner and the priest had an intimate relationship based on text messages that he saw, but he had no proof of them. Respondent also stated that petitioner withdrew money from the marital account, that under the current visitation schedule he could come "anytime from Friday to Sunday," but he usually arrived around 6 p.m. on Friday and left early on Sunday. When the GAL asked him why he wanted more time if did not currently exercise the time he was given, respondent stated that he had to work to pay bills, but he could adjust his schedule to spend more time with the children. Respondent admitted that he was not involved with the children's school, education, and doctors as there was an English language barrier and because he had to work. When the GAL asked him why he only wanted to have Maryana and not Zlata, respondent stated that he felt that Zlata needed more of a maternal role in her life and also that, because Maryana was older, the priest's intentions toward her could be stronger. Respondent was also concerned that because the priest had an influence over petitioner, he was worried that the priest could have an influence over Maryana as well. Respondent then stated that he wanted both children with him the majority of the time and petitioner could see them whenever she wanted, but then stated that petitioner was a danger to the children as she was violent and abusive. However, respondent did not further elaborate on the claim of violence by petitioner. Respondent also stated that he and petitioner did not communicate, and if there was an issue with the children, they called or texted. The GAL interviewed respondent again on May 10, 2022, at which time respondent indicated that nothing had changed. Respondent was aware that the priest no longer saw the children anymore but still stated that the priest was the reason his family fell apart and he still wanted the children with him. Respondent stated that petitioner was unstable and he worried that her actions in the future would not be in the best interests of the children, though he did not elaborate on that statement. Respondent again stated that he could change his work schedule to

have the children, and also that he still only wanted Maryana. Respondent further indicated that he was in the process of purchasing a condo in the same condo association and that petitioner could buy one there and see the children whenever she wanted. The GAL's third interview with respondent was on September 2, 2022, at his request. Respondent again stated that the parties were in this situation because of the priest and even though the priest was no longer involved with the family, respondent was concerned that petitioner could take the children back there in the future. As a result, respondent wanted sole decision-making authority related to the children. Respondent also stated that he was willing to give petitioner money to buy a new property to be placed in trust and given to the children when they turned 18. Respondent wanted petitioner to have the children all week and he would have them on the weekend when he came home. He stated that he could commit to every other weekend from Friday at 6 p.m. until Sunday at noon; respondent was not seeking weekday time because of his work schedule, but if his schedule changed, he would want that. However, respondent stated that until they resolved the housing situation, he could not commit to any changes in visitation.

¶ 31    The GAL first interviewed the children on May 17, 2022, via Zoom, after it became clear that the parties would not reach a settlement regarding allocation of parenting time. Maryana stated that she was 16 years old and in the 10th grade. She stated that they lived in the marital home, a three-bedroom condo and she had her own room. Maryana stated that their mom was there during the week and their father was usually there on the weekend. She liked that arrangement and further that she wanted to see both parents equally and as much as possible. Maryana detailed the activities that she did with both parents. Maryana confirmed that her parents did not communicate and was worried that her father might move back to Ukraine if she does not see him more because he told

her that a few times. Maryana also stated that one issue between her parents was the church they attended with her mom and that her dad did not like the priest. However, Maryana told the GAL that he was just the priest and not her mom's boyfriend, and further that they no longer see the priest or attend that church. The GAL also spoke with Zlata, who was five years old and in kindergarten. Zlata stated that she lived with her parents on different days, she liked being with both parents, she had one house and did not want two houses. Zlata stated that she saw her father on the weekends and wanted to see him more. Zlata also stated that her father let her do whatever she wanted and that was something she liked about being with him. She talked about the things she did with both parents, and also indicated that she felt safe with both parents.

¶ 32    The GAL again spoke with the children on July 12, 2022. Maryana still reported seeing her mom during the week and her father on the weekends, either Friday through Sunday or Saturday until Sunday. She stated that her father drank sometimes and sometimes she drove home for him. Maryana indicated that it was very rare that he threw up, but that it had happened. Maryana told the GAL that the idea of seeing her mom on the weekend and her father during the week sounded weird because it had never happened; ideally she wanted equal time with both parents but it would be difficult with her schedule. Maryana detailed the activities she did with both parents and confirmed that they still did not see the priest. The GAL also spoke with Zlata, who was going to first grade. Zlata reconfirmed the visitation schedule with both parents, stated that her parents were nice although her father sometimes drank. She again indicated that she felt safe with both parents, who were still in the house.

¶ 33    On July 21, 2022, the GAL spoke with Maryana, who stated that her mom was not influencing her. She also stated that her father called her and told her that she had to choose

between him and her mom. Maryana also stated that her father said court was a lot of money and if she did not pick him he would leave. He was also angry with her for saying that he drank alcohol; Maryana was very upset about that interaction.

¶ 34    The GAL last met with the children on September 1, 2022. However, Zlata did not want to talk, so she just spoke with Maryana. Maryana indicated that her father was no longer making her pick sides, and she still felt like she wanted equal time with both parents. The GAL told Maryana that her father was seeking visitation every other weekend, and Maryana stated that she did not like the idea of going two weeks without seeing him. She asked if there was a day during the off week when she could see him.

¶ 35    After her interviews with the parties and the children, the GAL considered the best interests factors and recommended that the children reside in petitioner's home. She noted that respondent's work schedule required him to be out of town during the week; thus, she recommended that respondent have parenting time with the children every other weekend from Friday at 6 p.m. until Sunday at 6 p.m., despite his wishes to only have parenting time until Sunday at noon. The GAL believed, based on respondent's earlier statements that there was more flexibility to his schedule than he indicated and that he had the ability to see the children later on Sunday if he wanted to. The GAL also noted that on his off weeks, respondent had the ability to modify his schedule to have an overnight visit with the children on Sunday or Thursday. She indicated that the children wished to see respondent more and that based on several of his statements, she believed respondent had the ability to make it happen. The GAL found that having both parties consistently part of the children's lives would be in their best interests; however, no one could make respondent take more time if he was unwilling to do so. If that was the case, the GAL recommended that respondent's

parenting time be every other weekend from Friday at 6 p.m. until Sunday at noon, because it was important for both parents to have weekend time with the children. She also indicated that it was not in the children's best interest for respondent to continue notifying petitioner eight hours in advance of his coming and going because the children needed stability and the ability to make plans. She further recommended that the nesting schedule should not continue; petitioner should remain in the marital home, which should be part of the property settlement later, and if she was awarded the marital home, the GAL indicated that petitioner should pay the mortgage and utilities. Respondent should be required to pay child support, maintenance, and extracurriculars; and while it was unclear if he had purchased the property at 2300 Windsor Mall Drive, respondent indicated that he had the ability to purchase a residence as he offered to purchase it for petitioner. The GAL found that it made no sense for petitioner to move as the marital home was where the children were used to residing and wanted to live in. As petitioner was the primary caretaker for the children and had the majority of the parenting time, the GAL found that petitioner should stay in the marital home.

¶ 36    With respect to decision-making, the GAL concluded that petitioner should make sole decisions concerning the children as she was the primary caretaker and had always made the decisions for the children. She noted that respondent admitted that he had not been involved in the children's schooling, medical or extracurricular activities though he was upset that petitioner attended a certain church with a certain priest. Petitioner stopped going to the church and seeing the priest, so it was no longer an issue although respondent, with no basis, speculated that she might go back to that church after the divorce. The GAL found that this was respondent's attempt to try and control petitioner and argue about issues that were not present. The GAL further found

that respondent was unwilling to work with petitioner and it was unlikely that they could co-parent and work together to make decisions for the children. The GAL further indicated that both children loved their parents and both parents loved the children. However, she noted that respondent's anger towards petitioner and the divorce clouded his judgment and he sometimes did not act in the best interests of the children.

¶ 37 On September 8, 2022, respondent filed a motion to vacate and reconsider the circuit court's August 25, 2022, order which barred him from testifying at the allocation trial. Respondent argued that the court's order barring him from testifying about the allocation of parental responsibility was not in the best interests of the children, was an abuse of discretion and a violation of respondent's constitutional due process rights. He also argued that petitioner had no standing to file a petition to enforce the court's order that he pay the GAL fees; only the GAL could file a petition to adjudicate. Respondent also maintained that barring his testimony was a very harsh and disproportionate sanction to the alleged violation and was an abuse of the circuit court's discretion.

¶ 38 Petitioner followed with a verified petition for rule to show cause on September 12, 2022, contending that respondent should be held in indirect civil contempt for his willful and contemptuous failure to comply with the parties' agreed order of October 29, 2019, regarding the payment of daycare and extra-curricular expenses or school fees for the children. The petition stated that, on information and belief, respondent was working and receiving cash payments and intentionally concealing money received from work. Petitioner alleged that respondent owed $2454.50 for daycare and camp costs for the children.

¶ 39 On the same day, petitioner filed a motion for default judgment of allocation and for sanctions against respondent for his failure to pay the GAL fees. Additionally, petitioner also filed

a motion to compel respondent to respond to discovery and for sanctions for his failure to comply with discovery. Specifically, petitioner alleged that respondent failed to produce any discovery related to his personal or business financial affairs, including bank accounts, nine real estate properties, six vehicles, businesses, life insurance, compensation from companies his business had contracted with, credit card statements, as well as other expenditures and expenses. Petitioner sought to invoke all available sanctions under Illinois Supreme Court Rule 219 (eff. July 1, 2002) as well as attorney fees and costs.

¶ 40    On September 14, 2022, respondent filed a motion to strike and dismiss petitioner's petition for specific contribution to attorney fees based on his failure to pay the GAL fees, restating his position that the circuit court's August 25, 2022, order should be vacated as it violated his constitutional due process rights. Among other things, respondent argued that the petition was insufficient as it did not itemize the attorney fees. Petitioner responded with an amended petition for specific contribution to her attorney fees on September 16, 2022, which itemized all attorney fees related to respondent's failure to pay the GAL fees.

¶ 41    That same day, petitioner filed a petition seeking contribution to her interim and prospective attorney fees and costs, noting that although the petition for dissolution was filed on October 21, 2019, there was no agreement regarding any of the outstanding financial matters raised in the dissolution petition, and that respondent's answer shows that there would continue to be substantial disagreement as to each and every aspect of the divorce. Petitioner also filed a verified petition for a finding of civil contempt, to set a purge and for sanctions for respondent's failure to pay the court-ordered GAL fees.

¶ 42 On September 19, 2022, the date of the allocation hearing, GAL filed a second invoice of her fees. The circuit court entered a written order after the allocation hearing and after consideration of respondent's motion to vacate the August 25, 2022, order barring him from testifying at the hearing. The written order indicated that the circuit court first addressed respondent's motion to vacate as well as the five pleadings filed by petitioner. The circuit court ordered as follows: (1) the August 25, 2022, order was vacated to allow respondent to testify at the allocation hearing and respondent testified; (2) petitioner was found to be the primary parent of the children and was awarded primary residential allocation in the current marital residence; (3) the current nesting situation was not working, was not in the best interests of the children, respondent had the financial ability to find and secure alternate housing and suitable living arrangements; exclusive possession of the marital residence was awarded to petitioner; respondent was ordered to vacate the residence by October 4, 2022, and was barred from entering the marital residence; respondent must exercise his parenting time at his new residence and must notify petitioner when he secured a new residence and the address; (4) respondent could not take or remove any personal property of the children and the parties were to agree in writing what property the respondent could remove from the marital residence; (5) respondent's parenting time was set for every other weekend beginning September 30, 2022, from Friday at 6 p.m. through Sunday at noon, conditioned on respondent providing no less than 24 hours prior written notice to petitioner that he would be exercising his parenting time; failure to provide such notice results in respondent forfeiting his alternate weekend parenting time for that weekend; (6) respondent to continue paying the mortgage, assessments, taxes, utilities and insurance on the marital residence as he had been paying and all other court orders requiring him to pay those expenses were still in force and effect; (7) respondent was not to put the children in the middle or punish the children for the court's

- 21 -

rulings and findings regardless of whether evidence was presented based on the children's or a child's statements to the GAL or to petitioner in the past, present or future; (8) the court would provide a written ruling and findings regarding decision making by the parties for the minor children; (9) the five pleadings filed by petitioner were set for hearing on October 6, 2022, if rules were issued on the petitions on October 6, 2022, they were returnable instanter that day and the GAL's fees would also be addressed that day; (10) respondent was given seven days to respond to the petitioner's pleadings; (11) both parties were to provide updated financial disclosures within seven days of the September 19, 2022, court date; and (12) the case was set for case management on October 6, 2022.

¶ 43    Respondent in turn filed a motion on September 22, 2022, to strike petitioner's amended petition for specific contribution to attorney fees and costs based on his failure to pay the GAL fees. He made the same arguments as in his previous motion. Petitioner tendered her updated financial affidavit to respondent on September 26, 2022.

¶ 44    On the same date, respondent tendered an updated financial affidavit to petitioner and filed several responses and motions. First, he filed a verified response to petitioner's petition to show cause. In his verified response, respondent contended that he was obligated to contribute to any extracurricular activities for the children and further that he was not provided with any invoices directly from the daycare provider. He also filed an answer to petitioner's request for contribution to her attorney fees. Additionally, respondent replied to petitioner's motion to compel discovery, in which he contended that the discovery requests were made in 2021. Finally, respondent filed a motion to strike petitioner's petition for a finding of indirect civil contempt, in which he admitted that the circuit court allowed him to testify at the allocation trial on September 19, 2022, but argued

that the court did not hold any hearing on whether his behavior in not paying the GAL fees was willful. He also restated his prior argument that the GAL never filed any pleading to claim the fees or enforcement of the court's prior order.

¶ 45 On October 4, 2022, respondent filed a verified counter petition for dissolution of marriage. On the same date, he filed a motion to vacate and reconsider or in the alternate stay the circuit court's September 19, 2022, order. In the motion, respondent contended that the circuit court erred in concluding that he had the financial ability to secure a new residence and requested that the court reconsider not allowing him to exercise his parenting time at the marital residence. Additionally, respondent filed a motion to reallocate the GAL's fees and order petitioner to pay 50% instead of one-third.

¶ 46 The circuit court entered a written order on October 6, 2022, after hearing on the various pleadings that were filed by both parties in the case. The court ordered as follows: (1) respondent was granted leave to file his counter petition for dissolution of marriage but it was considered a response and petitioner did not have to respond to it; (2) respondent withdrew his motion to vacate and reconsider without prejudice; (3) respondent's motion to sell the marital residence was continued for hearing as part of the trial; (4) petitioner was granted until October 28, 2022, to respond to respondent's petition to reallocate GAL fees; (5) petitioner was granted until October 28, 2022, to respond to the other outstanding pleadings filed by respondent, but if they were denied the circuit court would immediately proceed on petitioner's underlying petitions on November 3, 2022; (6) both parties' counsels were ordered to appear at a discovery conference on October 22, 2022; if disputes remained after the conference, the court would conduct a hearing on petitioner's motion to compel discovery on the same date; (7) petitioner's remaining pleadings were set as a

priority on November 3, 2022; (8) if time was available after such hearing, the court's case management conference would be concluded the court would hear respondent's pleadings that were not stricken or withdrawn; (9) respondent was to overnight discovery documents to the court; (10) respondent was to email pleadings to petitioner's counsel that were not received; (11) if a rule issued against respondent on November 3, 2022, such rule was returnable instanter for the same date; (12) a case management conference was set for November 3, 2022; (13) GAL fees would be addressed on November 3, 2022; (14) respondent's counsel was to provide information regarding the exact attorney fees paid or owed by respondent by the next court date; and (15) petitioner's counsel's motion to withdraw was voluntarily withdrawn without prejudice.

¶ 47     After an unsuccessful 201K conference, the circuit court held a hearing on petitioner's motion to compel discovery and for sanctions against respondent and respondent's failure to address the discovery deficiencies. In a written order on October 12, 2022, the circuit court ordered that respondent was required and compelled to provide written answers to and documentation of all of the items raised in petitioner's June 19, 2022, deficiency letter by October 25, 2022, including: bank statements and cancelled checks from the Chase account for 2018; documentation of all real estate acquired from the date of the marriage through the present; documentation related to all vehicles, watercraft, aircraft, cycles, trailers, ATVs or snowmobiles in respondent's name; documentation of any safe deposit boxes and their contents; life insurance policies; business accounts; business and personal credit card statements; Amazon and eBay purchases; lines of credit; loans, mortgages, and/or rent received; and documentation to support his claims that petitioner had not contributed to the accumulation of marital property or dissipated any marital property. Both parties were ordered to obtain current appraisals for the marital home within 30

days; and the assessment of attorney fees and sanctions against respondent was continued until the next court date of November 3, 2022.

¶ 48 The circuit court held a hearing on the allocation of parental responsibilities and decision making and parenting time on September 19, 2022, and issued its written order with findings of fact after hearing on October 14, 2022. The order indicated that both parties were present and represented by counsel and the GAL was present. The court heard testimony from the parties and the GAL. The circuit court found that on October 29. 2019, an agreed order was entered and both parties agreed to a nesting arrangement where petitioner resided in the marital residence with the children during the week and respondent resided with the children in the marital residence on the weekends. The circuit court found that respondent repeatedly failed to cooperate with the GAL by refusing to make appointments with the GAL despite court orders; requesting a 50/50 parenting schedule despite the fact that he works out of town during the week; requesting that each parent have one of their children reside with each parent full-time; failing to present his proposed parenting plan; and failing to pay his share of the GAL fees without any valid reason. The court also noted that on multiple occasions it ordered respondent to pay the GAL fees and to cooperate with the GAL on his parenting plan requests by a certain date or be barred from testifying and in fact was barred from testifying by court order on August 25, 2022. After the court order was entered, respondent then contacted the GAL to discuss the parenting issues and the court granted his motion to vacate the court's order barring him from testifying and respondent testified at the hearing.

¶ 49 The circuit court noted that it reviewed all testimony and all evidence submitted at trial which confirmed that the marital residence is located at 2500 Windsor Mall, Unit 1A in Park Ridge,

and that petitioner and the children reside there. Respondent was and still is an independent over-the-road truck driver who works Sunday through Friday out of town. Petitioner testified to the numerous problems with respondent not communicating with her as to when his parenting time would begin and end, and that respondent did not consistently exercise his parenting time on Fridays. Petitioner also stated the respondent would often not begin his parenting time until Saturday and would end early on Sunday. Those inconsistencies interfered with petitioner's work schedule and her need to find childcare coverage for the children during respondent's parenting time. Respondent admitted that he often did not respond to petitioner's communications believing that he did not have to and that his work schedule was uncertain and dependent on the jobs. Both parties testified that their current nesting situation was not working nor in each parent or the children's best interests. Respondent testified that he wished to remain in the marital home and could purchase a similar home nearby for petitioner to live in. The GAL testified that respondent told her that he was in the process of purchasing a unit in the same vicinity. The court agreed that the nesting situation was not working and entered a separate order on that issue on September 19, 2022. Petitioner proposed a written parenting plan and respondent did not.

¶ 50    The court indicated that it had reviewed the evidence and all of the relevant best interest factors as follows: (1) Petitioner had been the children's primary caregiver since birth, made all major decisions for the children and sought sole decision-making for all major parenting decisions as respondent was not home during the week; respondent exercised inconsistent parenting time on the weekends and often did not notify her of when he would begin and end parenting time; failed to actively supervise the children which resulted in the youngest child drawing all over the walls in the resident; respondent has been intoxicated during his parenting time where he was unable to

drive home and was sick in front of the children; and respondent left the marital residence dirty and a mess at the end of his parenting time; (2) Respondent on the other hand sought joint decision-making for all major decisions and sole decision-making regarding religion; however, the court noted that respondent had never participated in any decisions regarding the children; (3) the parties' communication was very poor, respondent admitted that he failed to communicate with petitioner on parenting issues including payment of educational and extracurricular activities, refused to pay without explanation; respondent stated there was no court order requiring him to respond to petitioner's texts and emails, which the court found unreasonable and confirmation that he lacked the ability to communicate with petitioner or place the children's best interests above his own; and the court noted that respondent's finances were not an issue as he paid cash for a car for Maryana; (4) the court noted respondent's requests for sole responsibility for religious decisions based on his objections during the course of the divorce to a particular priest that had previously provided marital counseling and his claims regarding child molestation charges which the court found were not corroborated by any facts outside of respondent's statements, and further that petitioner no longer attended that church or communicated with that priest since January 2022; (5) respondent's failure to consistently or fully exercise his parenting time; (6) the GAL's recommendation that petitioner be the primary caregiver and have sole authority to make responsibilities for the children as she has always done so and respondent is unavailable to be the primary caregiver due to his work schedule; (7) both children's desire to have both parents active in their lives and to not be in the middle of their parents' disagreements, as well as respondent's discussion of the divorce proceedings and threatening to return to Ukraine without them if they do not support him; (8) the overwhelming evidence that petitioner had been the primary caregiver for the children and made all decisions for them as respondent had always been absent during the week

and not objected to petitioner's decision; and further that respondent's position that the children and petitioner should be uprooted from their home for the one to two days that he is in Illinois was unreasonable and showed that respondent did not understand the needs of the children for stability nor was he willing to facilitate a good relationship between the children and petitioner; (9) the court adopted the GAL's recommendation that neither parent consume excessive alcohol that would render the parent unable to care for and transport the children or to discuss the divorce proceedings with the children; and (10) the court noted petitioner's previous order of protection against respondent for abuse.

¶ 51    As a result of its findings, the circuit court ordered that petitioner was granted sole allocation for the responsibility of all necessary decisions for the children in areas of education, healthcare, extracurricular activities, and religion; respondent was granted biweekly weekend parenting time from Friday at 6 p.m. until Sunday at noon, with appropriate and timely communication regarding the start and end time and dates; adopted petitioner's parenting plan provisions for holidays, vacation time and additional time during the week if respondent wanted to exercise it.

¶ 52    On October 19, 2022, respondent filed a motion to vacate the court's order of October 14, 2022, or alternately stay both that order and the September 19, 2022, order. Respondent sought to continue his parenting time at the marital residence or an order requiring petitioner to sell the marital residence or buy out his 50% interest in the marital residence.

¶ 53    On November 3, 2022, respondent was ordered to pay his past due portion of the GAL fees by 6 p.m. or a body attachment would be issued for him, and both parties were ordered to pay the new fees in the same proportion within seven days or a body attachment would issue. The GAL

was then discharged from her duties for the minor children without prejudice. As part of the court's findings, it noted that respondent sent over $300,000 to Ukraine where his brother lived; respondent testified that he paid cash for a car for Maryana in February 2022; and also had funds to place a $40,000 deposit on another condo in the area for petitioner. The court also found that respondent caused the entire proceeding to be prolonged by his conduct and failure to cooperate which caused substantial legal expenses to be unnecessarily incurred by petitioner.

¶ 54    Thereafter, on November 9, 2022, the circuit court entered a final allocation of parenting time consistent with the prior order from October 14, 2022 and included Rule 304 (eff. Mar. 8, 2016) language. On the same date, respondent was ordered to pay petitioner's counsel $27,500, which included $25,000 in interim attorney fees and $2500 of 508 fees ordered by the court due to respondent's contemptuous conduct. Respondent was also ordered to pay petitioner $4909 for back childcare expenses that he willfully failed to pay and for which he was held in indirect civil contempt on November 3, 2022. The circuit court subsequently set the case for case management and a hearing on January 18, 2023, on petitioner's motion to compel and for sanctions and fees.

¶ 55    Due to respondent's failure to comply with the court's orders entered in November 2022, petitioner filed a petition for indirect civil contempt, setting of purge amounts and for immediate incarceration on November 21, 2022. Respondent failed to pay petitioner's attorney fees as ordered. Among other things, the petition alleged that respondent told petitioner that he would financially ruin her and force her not to have counsel.

¶ 56    Respondent filed a motion to vacate and reconsider the circuit court's orders of November 3 and 9, 2022, on November 23, 2022. He argued that the court erred in granting an award to pay petitioner's attorney fees because she failed to meet her burden of proof, and that the court erred

in ordering him to pay other amounts for childcare expenses and other amounts for petitioner's attorney fees. Respondent also filed a notice of appeal from the circuit court's November 9, 2022, order on November 23, 2022 (case number 22-1776). Meanwhile, on November 28, 2022, the circuit court scheduled both parties' petitions for hearing on December 2, 2022. On that date, the circuit court found that a *prima facie* case of indirect civil contempt was shown against respondent, issued a rule to show cause and respondent was ordered to appear in court on December 13, 2022, or risk a body attachment. Additionally, the court denied respondent's motion to vacate and reconsider the circuit court's November 3 and 9, 2022, orders. Respondent was not present for the court hearing.

¶ 57     On December 14, 2022, the circuit court entered an order of adjudication of indirect civil contempt against respondent and he was again ordered to pay the arrearage. Respondent was ordered committed to the Cook County Jail, but such commitment was stayed until December 16, 2022, to allow respondent time to purge the contempt. In response, respondent filed a second notice of appeal on December 20, 2022, seeking reversal of the December 14 order finding him in indirect civil contempt (case number 22-1927).

¶ 58     On January 17, 2023, petitioner filed a motion for entry of a new body attachment for respondent outside of the courtroom due to the Sheriff's Office being unable to arrest respondent unless he was present in court or otherwise on court property. The order of adjudication and body attachment was subsequently amended the following day. Respondent did not appear in court despite being ordered to by the circuit court. Meanwhile, also on January 17, 2023, respondent filed a motion to stay the circuit court's orders during the pendency of his appeals. On January 19, 2023, the circuit court denied respondent's motion for a stay and again found that respondent had

willfully failed to comply with discovery requests and willfully failed to comply with or otherwise violated the court's orders, including orders to appear. Accordingly, the circuit court granted petitioner's request for sanctions and found respondent to be in default in the dissolution action as a sanction for his conduct, and respondent was barred from testifying or presenting evidence at the hearing. The default prove-up hearing was scheduled for February 22, 2023.

¶ 59    At the default prove-up hearing, respondent did not appear and respondent's counsel was not allowed to question petitioner as part of sanctions against respondent, over his objection that it violated due process. Petitioner testified on her own behalf at the hearing. At the conclusion of the hearing, the circuit court entered an order dissolving the marriage and awarding maintenance and child support to petitioner. Petitioner was also awarded the marital residence at 2500 Windsor Mall Drive, Unit 1A, which carried a joint mortgage, while respondent was awarded a residence at 2300 Windsor Mall Drive, which he bought cash. With respect to vehicles, petitioner was awarded the 2019 Toyota RAV 4, the 2013 Mini-Cooper for Maryana, the 2016 Artic Cat Snowmobile, the 2003 Peterbilt Tractor, and the 2015 Silver Audi A8. Respondent was awarded the 2007 Freightliner truck, Sprinter 2500, and a newer truck used for his business, as well as all other vehicles in his name and those he transferred to Ukraine during the marriage. Respondent was ordered to pay petitioner's $70,000 credit card fees incurred during the proceedings to cover her attorney fees and it could not be discharged in bankruptcy. The body attachment for the previously entered contempt charges remained in force and effect.

¶ 60    On March 16, 2023, respondent filed a motion to vacate and reconsider the default judgment for dissolution of marriage, contending that  he was denied his constitutional due process

rights because his counsel was not allowed to participate in the hearing and that he could not come to court because he was afraid of being arrested.

¶ 61 The circuit court entered a written order on March 20, 2023, denying respondent's motion after a hearing. Respondent was not present at the hearing. The court found that respondent was found in default on January 19, 2023, based on its ruling on petitioner's motion to compel and for Rule 219 sanctions, noting that it made specific findings on the record on January 18, 2023, that respondent, on numerous occasions and after entry of several court orders, willfully failed to comply with discovery and failed to disclose assets in the case that had been pending for over four years. The court also found that the body attachment for respondent was still in force and effect and noted that respondent repeatedly failed to purge his contempt and made no effort to do so since January 19, 2023, and chose instead to pay his counsel to file an appeal of the allocation judgment, a second appeal of the contempt orders, and to file the motion to vacate the default judgment. The court further found that respondent failed to pay the mortgage and household expenses since November 2022 as previously ordered. The court further found that respondent's motion to vacate the default judgment did not mention that respondent was defaulted and no attempt by respondent or his counsel to vacate the default prior to the prove-up hearing on February 22, 2023. The court found that respondent's proffered reason for his failure to appear was not appropriate and because he was defaulted, his attorney was properly barred form cross-examining petitioner at the prove-up hearing. The court also entered the Uniform Order of Support and Income Withholding of Support based on the default judgment as respondent did not respond or object.

¶ 62    Respondent filed a timely notice of appeal on April 5, 2023, to appeal the default judgment for dissolution of marriage (case number 23-0618, the current appeal), thus bringing his total appeals to three.

¶ 63    Respondent's first interlocutory appeal, case number 22-1776, filed on November 23, 2022, challenged the circuit court's allocation of parenting time between the parties. That appeal was decided on November 16, 2023, with this Court finding that the allocation of parenting time was not against the manifest weight of the evidence. This court also concluded that we had no jurisdiction to determine if it was an abuse of discretion for the circuit court to grant petitioner the marital home as it was not a final order. See *In re Marriage of Cholach*, 2023 IL App (1st) 221776-U.

¶ 64    Respondent's second interlocutory appeal, case number 22-1927, filed on December 20, 2022, challenged the contempt determinations against him and the circuit court's underlying orders that led to his indirect civil contempt. That appeal was decided on February 15, 2024, and affirmed the circuit court's contempt determinations as well as the underlying court orders. *In re Marriage of Cholach*, 2024 IL App (1st) 221927-U.

¶ 65                                  ANALYSIS

¶ 66    On appeal, respondent contends that the default judgment entered against him constitutes a violation of his constitutional due process rights. He argues that the circuit court erred in not allowing his attorney to cross-examine petitioner and that the default was improperly entered solely on petitioner's testimony. Respondent further claims that the default judgment "shocks the conscience." Respondent does acknowledge that he was defaulted because of his failure to comply with discovery.

¶ 67 The circuit court entered a judgment dissolving the parties' marriage on February 22, 2023, and denied respondent's petition to vacate the default and for rehearing on March 20, 2023. A notice of appeal was timely filed on April 5, 2023. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); 303 (eff. July 1, 2007).

¶ 68 We begin by noting that respondent's brief fails to acknowledge or discuss the fact that the default judgment for dissolution and what occurred at the prove-up hearing, namely that his counsel was not allowed to cross-examine petitioner, were the result of the circuit court's imposition of Rule 219(c) (eff. July 1, 2002) sanctions against him for his conduct throughout the proceedings.

¶ 69 Pursuant to Rule 219(c), the circuit court may impose sanctions against any party who "unreasonably fails to comply" with the supreme court's discovery rules or any order entered pursuant to those rules. Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). That rule sets forth a nonexclusive list of sanctions which a court may impose, where just, including that "the offending party be debarred from filing any other pleading relating to any issue to which the refusal or failure relates," "the offending party be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue," and "a witness be barred from testifying concerning that issue." *Id.* Under Rule 219(c), the court may also enter a judgment of default against the offending party, dismiss the offending party's action with or without prejudice, or strike any portion of the offending party's pleadings related to that issue. *Id.* Additionally, a court "may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of

reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee. *Id.* Sanctions are used to "combat abuses of the discovery process and maintain the integrity of the court system." *Locasto v. City of Chicago,*. 2014 IL App (1st) 113576, ¶ 27.

¶ 70    We find our supreme court's decision in *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112 (1998) to be instructive on the issue of Rule 219(c) sanctions. The court held that, when imposing sanctions, the court's purpose is to coerce compliance with discovery rules and orders, not to punish the dilatory party. *Id.* at 123. A sanction which results in a default judgment is a drastic sanction to be invoked only in those cases where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority. *Id.* Such sanction should only be employed as a last resort and after all the court's other enforcement powers have failed to advance the litigation. *Id.*

¶ 71    The decision to impose sanctions under Rule 219(c) is within the discretion of the trial court, and we will not reverse that decision absent a clear abuse of discretion. *Id.* at 120. To determine if the trial court abused its discretion, a reviewing court must look to the criteria upon which the trial court relied in making its determination of an appropriate sanction. *Id*. at 123-24. The factors a trial court is to use in determining what sanction, if any, to apply are: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence. *Id.* at 124. Of these factors, no single factor is determinative. *Id.*

¶ 72      In the case at bar, we find no abuse of discretion by the circuit court in imposing Rule 219(c) sanctions. As noted above, over the course of the almost four years of litigation, respondent's behavior established a pattern of refusal to fully comply with discovery requests, a refusal to abide by court orders, resulting in several contempt orders being entered against him, which we note that he never attempted to purge. The record is replete with situations where, in *lieu* of complying with discovery or court orders, respondent instead filed frivolous pleadings to stall the proceedings. Additionally, the circuit court also found that respondent told petitioner that he was going to financially ruin her and make her unable to pay her attorney fees by stalling the litigation.

¶ 73      In reviewing the applicable factors, all of the factors weigh in petitioner's favor. First, there was no surprise to respondent and petitioner had consistently sought sanctions for respondent's failure to comply with discovery or abide by court orders to comply. The circuit court had previously barred respondent from testifying at the allocation trial as a sanction for failing to comply with discovery and failing to comply with court orders. However, respondent ultimately complied with discovery, requested that the order barring his testimony be vacated, which the circuit court granted. The record indicates that respondent never sought to vacate the default, which he could have done by purging the contempt orders against him, which further support the circuit court's determination that respondent's actions were willful and unreasonable.

¶ 74      The discovery evidence sought in discovery by petitioner would have provided a clearer picture of respondent's finances and financial situation, in crafting the marital settlement agreement. Due to the default against respondent and the bar to his presentation of evidence, the

only evidence presented at the prove-up was petitioner's testimony, which was consistent with other filings and evidence before the court. As such, any prejudice to respondent was minimal.

¶ 75    The record established that petitioner consistently sought discovery materials from respondent throughout the course of the proceedings, to no avail. The record does not reflect that respondent objected to the sanction; he did not even appear at the prove-up hearing or the prior court date. Rather, his counsel only objected to not being allowed to cross-examine petitioner at the hearing, which the circuit court denied as part of the 219(c) sanctions. Finally, the record consistently shows petitioner's good faith in participating throughout the proceedings and testifying at the prove-up hearing based on proffered documentation she was in possession of (which was previously made part of the record) and based on her information and belief. It also bears noting that, despite respondent's consistent disregard of discovery requests and court orders and otherwise egregious behavior throughout the proceedings, the circuit court gave him numerous opportunities to purge the contempt before entering the default and other sanctions against him.

¶ 76    We conclude that, based on the circumstances presented in this case, the sanctions imposed by the circuit court against respondent were not an abuse of discretion and we reject his theory on appeal that the imposition of Rule 219(c) sanctions which also served to bar his attorney from participating in the prove-up hearing was somehow a violation of his constitutional due process rights. Rather, these were sanctions for respondent's continued failure to comply with discovery and flagrant disregard of court orders, which the circuit court was within its power to impose.

¶ 77                                    CONCLUSION

¶ 78    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 79    Affirmed.